Chief Judge Fum.
On this appeal, the defendant asks us to reconsider our recent decision in Seider v. Roth (17 N Y 2d *308 111) that the contractual rights of an insured under a policy of liability insurance constitute a “debt” which is subject to attachment.
On August 13, 1964, the infant plaintiff, a resident of New York, was injured when cut by the propeller of a boat owned by the defendant, a Connecticut resident, in the waters off Madison, Connecticut. The youngster and his father brought a negligence suit against the defendant in this State. Unable to obtain personal jurisdiction over the defendant in New York, the plaintiffs had the summons and complaint delivered to the defendant at his residence in Connecticut and attached a liability policy issued to the defendant in that State by the Insurance Company of North America, a Pennsylvania corporation doing business in New York and having an office in Manhattan.[1]
The defendant moved to vacate the attachment on jurisdictional and constitutional grounds. The court at Special Term denied the motion; the Appellate Division unanimously affirmed “ on constraint of Seider v. Roth ” (17 N Y 2d 111), and granted the defendant leave to appeal to us.
This court in 1966 held in the Seider ease (17 N Y 2d 111, supra) that the contractual obligation of an insurance company to its insured under its liability insurance policy constitutes a “debt” under CPLR 5201 and, as such, is subject to attachment, at the suit of an injured third party, under CPLR 6202. As noted above, the defendant upon this appeal asks us to reconsider and overrule our decision in Seider in the light of Federal constitutional issues not raised in that case. The constitutional contentions now urged are that the attachment made pursuant to the provisions of the CPLR as construed (1) offends against due process; (2) imposes an undue burden on interstate commerce in the field of insurance; and (3) impairs the obligations of the contract of liability insurance herein.
*309 Neither of the last two constitutional arguments has, in our judgment, anything to do with the case,[2] although it does have due process overtones. No claim is advanced, and obviously none may be made, that the defendant did not have notice of the attachment. (See, e.g., Harris v. Balk, 198 U. S. 215, 227; Holmes v. Camp, 219 N. Y. 359, 369.) Our decision turns, then, on whether the obligation of the insurer, doing business in New York, to defend and indemnify the insured (under its policy) enables the New York courts to exercise jurisdiction in rem over him.
In reaching its conclusion in Seider, the court relied on its decision in Matter of Riggle (11 N Y 2d 73), characterizing it as a “ pertinent decision which cannot be distinguished away ” (17 N Y 2d, at p. 113). The Riggle case involved the continuance of a negligence action in New York following the death of the defendant Riggle who was a nonresident. To obtain such a continuance, it was necessary to have an ancillary administrator appointed and served in New York, and that could only be done, pursuant to the Surrogate’s Court Act (§ 45, subd. 3), if Riggle left real or personal property in New York State. The court, after noting that the only property claimed to have been left by Riggle in New York was “ the personal obligation of an indemnity insurance carrier to defend him as an additional insured under a liability policy ”, went on to hold that “ this liability insurance policy, even though no judgment has yet been obtained against Riggle or his estate, constituted Riggle as a creditor and the insurance carrier as a debtor within the broad meaning of [Surrogate’s Ct. Act, § 47] for this purpose ” (11 N Y 2d, at p. 76).
In the course of his opinion in Seider (17 N Y 2d 111, supra), Chief Judge Desmond,, who wrote for the court, quoted from *310 that excerpt and then stated (p. 114): “ It is interesting to note that the dissenting Judge in Matter of Riggle conceded that the insurance company’s obligation ‘ to defend and contingently indemnify ’ was a debt, but he was of the opinion, contrary to that of the majority, that the insurer was not a resident of the State within the meaning of section 47. The reasoning of the Riggle case is sound and calls for an affirmance here. Decisions just like Riggle, some of them quite old, are found in other States [cases cited].” And Judge Desmond added (pp. 114-115): “ Not only has the law question in this case been decided by Riggle but there is no policy reason against requiring the insurer to come in to New York and defend as to an accident which occurred in Vermont injuring New York residents, any more than there was in Oltarsh v. Aetna Ins. Co. (15 N Y 2d 111) where for the first time we held that when New York residents were injured outside the State we would allow a direct action in New York against the insurer although there was nothing in previous New York law permitting it.”
As demonstrated by a reading of the majority and dissenting opinions in the Seider case, the question whether the insurer’s obligation constitutes a debt owing to the insured defendant and, as such, is subject to attachment under the CPLR was thoroughly debated and considered. It was our opinion when we decided that case, and it still is, that jurisdiction in rem was acquired by the attachment in view of the fact that the policy obligation was a debt to the defendant. And we perceive no denial of due process since the presence of that debt in this State (see, e.g., Harris v. Balk, 198 U. S. 215, supra)—contingent or inchoate though it may be — represents sufficient of a property right in the defendant to furnish the nexus with, and the interest in, New York to empower its courts to exercise an in rem jurisdiction over him. It is, of course, hardly necessary to add that neither the Seider decision nor the present one purports to expand the basis for in personam jurisdiction in view of the fact that the recovery is necessarily limited to the value of the asset attached, that is, the liability insurance policy. For the purpose of pending litigation, which looks to an ultimate judgment and recovery, such value is its face amount and not some abstract or hypothetical value.
*311 The argument that our decision sanctions, a “ direct action ” against the insurer is sufficiently answered by what we wrote in Seider v. Roth (17 N Y 2d, at p. 114) :
‘‘It is said that by affirmance here we would be setting up a ‘ direct action ’ against the insurer. That is true to the extent only that affirmance will put jurisdiction in New York State and require the insurer to defend here, not because a debt owing by it to the defendant has been attached but because by its policy it has agreed to defend in any place where jurisdiction is obtained against its insured.”
In concluding that we should adhere to Seider v. Roth, it may prove helpful to have in mind some of the considerations upon which that decision was predicated.
The historical limitations on both in personam and in rem jurisdiction, with their rigid tests, are giving way to a more realistic and reasonable evaluation of the respective rights of plaintiffs, defendants and the State in terms of fairness. (See, e.g., International Shoe Co. v. Washington, 326 U. S. 310; McGee v. International Life Ins. Co., 355 U. S. 220; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443.) Such an evaluation requires a practical appraisal of the situation of the various parties rather than an emphasis upon somewhat magical and medieval concepts of presence and power. Viewed realistically, the insurer in a case such as the present is in full control of the litigation; it selects the defendant’s attorneys; it decides if and when to settle; and it makes all procedural decisions in connection with the litigation. (See, e.g., Thrasher v. United States Liado. Ins. Co., 19 N Y 2d 159, 167.) Moreover, where the plaintiff is a resident of the forum state and the insurer is present in and regulated by it, the State has a substantial and continuing relation with the controversy. For jurisdictional purposes, in assessing fairness under the due process clause and in determining the public policy of New York, such factors loom large.
The position taken by some who disagree with Seider would require that, as a matter of State policy, insurance be explicitly eliminated as the basis for the exercise of our in rem jurisdiction but this represents a judgment requiring data and information *312 with respect to the practical effect of the Seider decision not presently available to this court.
Almost half a century ago, Chief Judge Cardozo began his famous article, “ A Ministry of Justice ” (35 Harv. L. Rev. 113), with the statement that “ The courts are not helped as they could and ought to be in the adaptation of law to justice ”. Some time thereafter, the New York Legislature created a Law Revision Commission and, more recently, the State’s Judicial Conference appointed an Advisory Commission on Practice and Procedure to make studies and recommend changes in the rules and statutes governing our law. Revision of the bases for in personam jurisdiction has been the subject of recent major legislative changes. The bases for the exercise of in rem jurisdiction, however, have been carried over into the CPLR from the Civil Practice Act with little change. Under the circumstances, it would be both useful and desirable for the Law Revision Commission and the Advisory Committee of the Judicial Conference, jointly or separately, to conduct studies in depth and make recommendations with respect to the impact of in rem jurisdiction on not only litigants in personal injury cases and the insurance industry but also our citizenry generally. In the course of such studies, consideration will undoubtedly be given to the relationship inter se, of in rem jurisdiction, in personam jurisdiction and forum non conveniens. Absent new data suggesting the desirability of a departure from the general principles underlying in rem jurisdiction, as reflected in Seider, we find neither basis nor justification for departing from our holding in that case.
The order appealed from should be affirmed, with costs, and the certified question answered in the affirmative.

. An ex parte order of attachment was entered at Special Term directing the Sheriff of the City of New York to levy on any property of the defendant within his jurisdiction sufficient to satisfy the demands of the plaintiff, and the Sheriff thereafter attached the “ rights ” of the defendant under a policy of liability insurance issued by North America.

. The defendant lacks standing to raise the “ interstate commerce ” argument but, even assuming he may, it is answered sufficiently in Morris Plan Ind. Bank of N. Y. v. Gunning (295 N. Y. 324), in which we declared (p. 332) that the inconvenience caused by the attachment of a nonresident’s wages, earned out of state from a railroad doing business in New York, “ does not constitute an unconstitutional burden on commerce (Davis v. C.C.C. & St. L. Ry., 217 U. S. 157) ”. Nor is there any merit to the defendant’s argument—which was not raised below—that the attachment impairs contract obligations by “literally inviting the insured to withhold * * * co-operation ”. If the insured does refuse to co-operate, the insurer’s recourse is clear: he may withdraw and assert such lack of co-operation as a defense in any action brought against him under section 167 of the Insurance Law.