George E. FARRELL, as Administrator de bonis non of the Estate of Wyand F. Doerner, Jr., deceased, et al., Plaintiffs,

v.

PIEDMONT AVIATION, INC., the Boeing Company, United States of America, Rapidair, Inc., and Lanseair, Inc., Defendants.

No. 68 Civ. 2538.

United States District Court
S. D. New York.

Nov. 27, 1968.

Kreindler & Kreindler, New York City, for plaintiffs; Lee S. Kreindler, Milton G. Sincoff, Gerald A. Robbie, William D. Siegel, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant Rapidair, Inc., and garnishee, St. Paul Fire and Marine Ins. Co.; John Osnato, Jr., Walter E. Rutherford, New York City, of counsel.

Robert M. Morgenthau, United States Atty., for the United States of America; Patricia M. Hynes, Asst. United States Atty., of counsel.

WYATT, District Judge.

This is a motion by defendant Rapidair, Inc. (Rapidair) and by a "garnishee" St. Paul Fire and Marine Insurance Company (St. Paul) for an order vacating the attachment of the insurance policy issued by St. Paul to Rapidair, setting aside the service of process and dismissing the action as against Rapidair.

The claims asserted in the complaint are by the personal representatives of 13 passengers on a Piedmont Airlines plane who died when the plane crashed after a midair collision on July 19, 1967. There were 74 passengers and 5 crew members in the Piedmont plane and the pilot and 2 passengers in the plane with which it collided; all died on both planes.

The collision was over Hendersonville, North Carolina, and the crash was near that town. Hendersonville is in Henderson County, one of the counties in the Western District of North Carolina, and is some 20 or 25 miles south of Asheville, one of the places where Court is held in the District.

The complaint avers that defendant Piedmont Aviation, Inc. (Piedmont) was operating as a common carrier the Boeing aircraft which crashed and in which the decedents of plaintiffs were passengers; that defendant The Boeing Company (Boeing) designed, made and owned the aircraft; that defendant Lanseair, Inc. (Lanseair) owned and operated a Cessna aircraft; that defendant Rapidair, Inc. (Rapidair) also operated,

maintained, etc. this Cessna aircraft; that the Boeing plane and the Cessna plane collided, causing the crash; that the collision was caused by the concurrent negligence of all the defendants; that Piedmont, Lanseair, and Rapidair failed to keep an adequate lookout; that Boeing designed the cockpit of its aircraft unreasonably to restrict the field of vision; and that the United States operated an air traffic control facility at Asheville Municipal Airport from which it communicated to the two planes but caused them to collide by failing to issue proper instructions, information and clearances.

Jurisdiction over the claims against the United States is based on a part of the Federal Tort Claims Act (28 U.S.C. § 1346(b)). Jurisdiction over the claims against the other defendants is said to rest on diversity of citizenship (28 U.S.C. § 1332).

Each of the plaintiffs is an administrator, with or without a will annexed, of one or more of the 13 passengers. Eight of these passengers were citizens of Mississippi, one of Texas, two of Tennessee, and two of Maryland. Six of the decedents appear to have died intestate; seven appear to have left wills. Each of the plaintiff administrators (in one instance, as administratrix) is a citizen of New York, appointed as administrator in the State of domicile of his or her decedent.

It seems to be undisputed that Piedmont, Boeing, Rapidair and Lanseair each is incorporated under the laws of, and has its principal place of business in, a State other than New York, Mississippi, Texas, Tennessee or Maryland. Diversity jurisdiction over these defendants is established.

Plaintiffs moved this Court ex parte for an order of attachment of the property of defendants Rapidair and Lanseair, Inc. under the authority of Fed. R.Civ.P. 4(e) and 64, giving plaintiffs the benefit of State attachment laws. Rapidair and Lanseair are said (without contradiction) to be Missouri corporations with their principal places of busi-

ness in Missouri. New York CPLR § 6201(1) authorizes an order of attachment against a foreign corporation defendant. It was represented that United States Aviation Underwriters, Incorporated and United States Aircraft Insurance Group, both doing business in New York, had issued an aircraft liability insurance policy to Rapidair with respect to the Cessna plane involved in the collision.

Judge Frankel made an order of attachment which order was filed June 21, 1968. The Marshal served notice of levy on United States Aircraft Insurance Group specifying that the levy was on an "obligation to defend and indemnify Rapidair, Inc. and/or Lanseair, Inc. under an Aircraft Liability Insurance Policy".

It turned out that a mistake had been made and that the insurer of Rapidair was St. Paul, which does business in New York. A supplemental order of attachment was made by Judge Bonsal and filed July 9, 1968. This order directed the attachment, as the property of Rapidair, of the policy issued by St. Paul. This policy had been issued by an agent of St. Paul in Illinois and had been delivered to Rapidair in Missouri. The Marshal served notice of levy on St. Paul in New York on July 11, 1968, specifying that the levy was on "the obligation to defend and/or indemnify Rapidair, Inc. contained in an aircraft liability Insurance Policy".

■ The validity of the attachment is determined by the law of New York, subject to federal constitutional limitations.

A sharply divided (4–3) Court of Appeals of New York has sustained an attachment which, with one significant difference, was like that at bar. Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).

The significant difference is that plaintiffs in Seider v. Roth were residents of New York and the action was being prosecuted for their benefit. The Court declared that there was "no policy

reason against requiring the insurer to come in to New York and defend as to an accident which occurred in Vermont *injuring New York residents * * *"* (17 N.Y.2d at 114, 269 N.Y.S.2d at 102, 216 N.E.2d at 315; emphasis supplied).

The question later came again before the Court of Appeals in Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967). Again plaintiffs were residents of New York and the action was prosecuted for their benefit. Again the Court (5–2) upheld the attachment. Two of the judges in the majority, however, voted to uphold the attachment "only on constraint of Seider v. Roth" (21 N.Y.2d at 314, 287 N.Y.S.2d at 640, 234 N.E.2d at 674) and while disagreeing with that decision, one of the two had in fact dissented in Seider v. Roth; these two judges voted to sustain the attachment "because the institutional stability of a court is more important than any single tolerable error" (21 N.Y.2d at 316, 287 N.Y.S.2d at 642, 234 N.E.2d at 675).

The opinion of Chief Judge Fuld, voting to sustain the attachment, emphasized the New York residence of plaintiffs: "Moreover, *where the plaintiff is a resident of the forum state* and the insurer is present in and regulated by it, the State has a substantial and continuing relation with the controversy. For jurisdictional purposes, in assessing fairness under the due process clause and in determining the public policy of New York, such factors loom large" (21 N.Y.2d at 311, 287 N.Y.S.2d at 637, 234 N.E.2d at 672; emphasis supplied). Judge Burke in dissent was not certain that Seider v. Roth required that the plaintiff be a resident of New York at the time of the accident and suggested a possible "privileges or immunities" problem if it did (21 N.Y.2d at 318 and fn. 3, 287 N.Y.S.2d 633, 234 N.E.2d 669).

Logically the Seider v. Roth attachment should not be affected by whether the action is for the benefit of a New York resident. The holding was that the insurance contract was a "debt" within the meaning of CPLR Sections

5201 and 6202, and was thus subject to attachment.

■ It is concluded, however, that—whether logical or not—the Court of Appeals of New York would not uphold a *Seider v. Roth* type of attachment where the action is for the benefit of a nonresident of New York. This same conclusion has been reached in a unanimous decision of the Appellate Division, Second Department. *Vaage v. Lewis*, 29 A.D.2d 315, 288 N.Y.S.2d 521 (March 4, 1968)

Plaintiffs press upon me that they are indeed residents and citizens of New York. At the same time they are only nominal parties; admittedly the action is entirely for the benefit of persons residing outside the State of New York, who were so residing at the time of the fatal crash, and whose decedents were residing outside the State of New York.

■ So far as defendants Rapidair, Inc. and Lanseair, Inc. are concerned the action in this Court must fail. The reasons for bringing the action here are perfectly understandable and from the standpoint of plaintiffs it is desirable to have all the alleged tortfeasors before the same Court. By separate order the action is being transferred to the United States District Court for the Western District of North Carolina. It appears likely that by virtue of a type of "long arm" statute in North Carolina (N.C. Gen.Stat. § 1–107.3) plaintiffs will be able to make service on Rapidair, Inc. and Lanseair, Inc. and subject them to the in personam jurisdiction of the federal court in North Carolina, thus to a substantial extent accomplishing their purpose.

The motion of defendant Rapidair, Inc. and of St. Paul Fire and Marine Insurance Company is granted. The orders of attachment filed June 21, 1968 and July 9, 1968 and all levies made thereunder are vacated and set aside. The service of process on defendant Rapidair, Inc. is vacated and set aside. There is an express determination that there is no just reason for delay (Fed.

R.Civ.P. 54(b)) and the Clerk is expressly directed to enter judgment in favor of defendant Rapidair, Inc. dismissing the action as against said defendant for lack of jurisdiction over the person.

So ordered.

## On Motion to Transfer

This is a motion by defendant United States for an order transferring this action to the United States District Court for the Western District of North Carolina. Such a transfer is urged for "the convenience of parties and witnesses, in the interest of justice". 28 U.S.C. § 1404(a)

The claims asserted in the complaint are by the personal representatives of 13 passengers on a Piedmont Airlines plane who died when the plane crashed after a midair collision on July 19, 1967. There were 74 passengers and 5 crew members in the Piedmont plane and the pilot and 2 passengers in the plane with which it collided; all died on both planes.

The collision was over Hendersonville, North Carolina, and the crash was near that town. Hendersonville is in Henderson County, one of the counties in the Western District of North Carolina, and is some 20 or 25 miles south of Asheville, one of the places where Court is held in the District.

The complaint avers that defendant Piedmont Aviation, Inc. (Piedmont) was operating as a common carrier the Boeing aircraft which crashed and in which the decedents of plaintiffs were passengers; that defendant The Boeing Company (Boeing) designed, made and owned the aircraft; that defendant Lanseair, Inc. (Lanseair) owned and operated a Cessna aircraft; that defendant Rapidair, Inc. (Rapidair) also operated, maintained, etc. this Cessna aircraft; that the Boeing plane and the Cessna plane collided, causing the crash; that the collision was caused by the concurrent negligence of all the defendants; that Piedmont, Lanseair, and Rapidair failed to keep an adequate lookout; that Boeing designed the cockpit of its aircraft unreasonably to restrict the field

of vision; and that the United States operated an air traffic control facility at Asheville Municipal Airport from which it communicated to the two planes but caused them to collide by failing to issue proper instructions, information and clearances.

Jurisdiction over the claims against the United States is based on a part of the Federal Tort Claims Act (28 U.S.C. § 1346(b) ). Jurisdiction over the claims against the other defendants is said to rest on diversity of citizenship (28 U.S.C. § 1332).

Each of the plaintiffs is an administrator, with or without a will annexed, of one or more of the 13 passengers. Eight of these passengers were citizens of Mississippi, one of Texas, two of Tennessee, and two of Maryland. Six of the decedents appear to have died intestate; seven appear to have left wills. Each of the plaintiff administrators (in one instance, as administratrix) is a citizen of New York, appointed as administrator in the State of domicile of his or her decedent. It is the citizenship of the administrators which until recently at least has been controlling for diversity purposes, even where their appointment was with the object of enabling an action to be commenced in a federal court. Lang v. Elm City Construction Co., 217 F.Supp. 873 (D.Conn.), affirmed 324 F.2d 235 (2d Cir. 1963). The decisions cited, both of the Court of Appeals and of the District Court, relied heavily on Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3d Cir. 1959). The attention of the Court has properly been called to the fact that on October 2, 1968, *Corabi* was expressly overruled. McSparran v. Weist, 402 F.2d 867 (3d Cir.). This, however, is of no significance to the case at bar because the beneficiaries of the several estates here, as well as the decedents themselves, are or were, citizens of states other than those of which defendants are citizens. Diversity jurisdiction was not "manufactured" in the case at bar, the point on which the recent Third Circuit decision turned. (In the case at bar, there may have been a "manufacture" of venue.) See American Law Institute, Study of the Division of Jurisdiction Between the State and Federal Courts, pp. 8–9, 63–65, (Official Draft, 1965).

It seems to be undisputed that Piedmont, Boeing, Rapidair and Lanseair each is incorporated under the laws of, and has its principal place of business in, a State other than New York, Mississippi, Texas, Tennessee or Maryland. Diversity jurisdiction over these defendants is established.

Actions have been elsewhere commenced on behalf of other Piedmont passengers who died in the crash. The parties have supplied little information as to these other actions. The moving affidavit states that "49 lawsuits" are pending in three District Courts of the United States, including the case at bar. The moving memorandum states that "46 cases" are pending in the Western District of North Carolina, "two cases" are pending in the Western District of Missouri, and the case at bar was brought here. A copy of an order of the District Court for the Western District of North Carolina indicates that there are 61 separate actions in that Court arising from the Piedmont crash. Piedmont, the United States, Rapidair and Lanseair are defendants in one or more of those actions; whether Boeing is a defendant does not appear. It is said for Piedmont that there are "a number of actions pending in both the State and Federal Courts of North Carolina". A copy of an order submitted for Piedmont indicates some coordination of these actions between the State and Federal Court in North Carolina.

■ When parties move to transfer an action to another district and rely on the pendency of related actions in that other district, complete and accurate information should be furnished as to those related actions.

■ It is assumed that a number of actions arising from the Piedmont crash are in fact pending in the District Court for the Western District of North Caro-

lina. It also appears that in personam jurisdiction can be obtained over Piedmont in that District since Piedmont is a North Carolina corporation. North Carolina has a type of "long arm" statute (N.C.Gen.Stat. § 1–107.3) applicable to nonresident operators, maintainors, etc. of aircraft under which service may be made on the Secretary of State of North Carolina and in personam jurisdiction secured over Rapidair and Lanseair and possibly also over Boeing. The United States may properly be sued in the Western District of North Carolina since in that district "the act or omission complained of occurred". 28 U.S.C. § 1402(b).

The place of the accident was North Carolina; the investigation took place there and it is said that 134 witnesses were interviewed, all within a three mile radius of Hendersonville. The negligence, if any, of Piedmont, Rapidair, Lanseair and of the United States took place in North Carolina. The survivors of the decedent passengers in the case at bar live closer to the Court House in Asheville than to this Court House.

Every consideration of convenience and efficiency suggests that all litigation arising from this tragic disaster should be concentrated in one district. Logically, the Western District of North Carolina is that one district. It would be wasteful judicial administration for judges in two or more districts to be occupied at the same time by the same problems of fact and law.

Plaintiffs successfully explain why the action was brought in this District. North Carolina has statutes which require that any action for the wrongful death of an *intestate* decedent (and, as noted, six of the decedents here died intestate) must be brought by a resident of North Carolina appointed as administrator by a North Carolina Court. N.C. Gen.Stat. § 28–173 is the wrongful death statute; § 28–8(2) disqualifies nonresidents as administrators but not as executors; see Fennell v. Monongahela Power Co., 350 F.2d 867 (4th Cir. 1965).

As to the six intestate decedents, no action could be brought in the federal court in North Carolina because the administrators are not North Carolina residents appointed by a North Carolina court and, if they were, there would be no diversity jurisdiction. An action in the state court is understandably a poor alternative because the United States cannot be sued in a state court.

Relying on Hoffman v. Blaski, 363 U. S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), plaintiffs say that the Western District of North Carolina is not a district where the action "might have been brought", this because of the cited North Carolina statute. Therefore plaintiffs assert that this Court lacks *power* to transfer the action. If plaintiffs were correct in their assertion, the motion to transfer would be promptly denied.

A careful reading of Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) convinces me that plaintiffs are not correct in their assertion.

The principle in Van Dusen v. Barrack is that the words "where it might have been brought" refer only to federal laws as to venue and service of process and not "to laws of the transferee State concerning the capacity of fiduciaries to bring suit" (376 U.S. at 624, 84 S.Ct. at 813). I am unable to distinguish Van Dusen v. Barrack from the case at bar and must conclude that there is power to transfer the action under 28 U.S.C. § 1404(a).

The motion of the United States is granted. The action is transferred to the United States District Court for the Western District of North Carolina. The Clerk is directed to forward all papers to the Clerk of that Court at Asheville.

So ordered.