**William A. ROBINSON, Appellant,**

**v.**

**O. F. SHEARER & SONS, INC.**

**and**

**Royal Globe Insurance Companies.**

**No. 17990.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 1, 1969.

Decided July 7, 1970.

Rehearing Denied Aug. 6, 1970.

84

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

George I. Buckler, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellees.

Before GANEY, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Western District of Pennsylvania dismissing plaintiff's complaint for lack of jurisdiction.

Plaintiff, a seaman, brought this action against the defendant O. F. Shearer & Sons, Inc. He alleged that he was injured while employed on defendant's barge near Lawrenceburg, Indiana. Plaintiff sought maintenance and cure payments, and Jones Act and unseaworthiness damages.

Plaintiff first contends that defendant was validly served pursuant to subsection 2011 subd. B of Pa.Stat.Ann. tit. 15.[1] That provision authorizes service on a foreign corporation by serving the Secretary of the Commonwealth when such corporation has done any business in the Commonwealth without procuring a certificate of authority to do so. Thus, the efficacy of service under this statute here turns on whether defendant, who admittedly had no certificate, was doing business in Pennsylvania.

An initial question arises as to whether, as plaintiff asserts, the district court erred in its ruling limiting plaintiff's interrogatories to inquiry of business transactions between defendant and other corporations within the Commonwealth. Plaintiff's interrogatories sought information concerning transactions between defendant and other entities even though they had no Pennsylvania connection. Since the information was sought to show the defendant was doing business in Pennsylvania for service of process purposes, we think the

---

1. Fed.R.Civ.P. 4(d) and 4(e) permit the use of such statute to effect service in the district court.

limitation imposed by the district court was proper.

■ Having concluded that the district court's ruling did not wrongfully limit plaintiff in making a record on this issue, we now turn to a consideration of the merits. It is undisputed that the defendant is a Delaware corporation with its principal offices outside of Pennsylvania.

Between December 1965 and December 1968 the defendant negotiated four contracts to have Hillman Barge and Construction Company of Brownsville, Pennsylvania build 33 barges having a value of about $1.4 million. The contracts were negotiated outside of Pennsylvania and provided that the barges were to be delivered to defendant on the Monongahela River at Brownsville, Pennsylvania. The defendants contracted with Point Towing Company of Port Pleasant, West Virginia, to tow the barges to points outside of Pennsylvania. This was done. So far as this record shows, the defendant had no other connection with Pennsylvania.

At the date the service by mail was completed pursuant to § 2011 subd. B of Title 15, about August 23, 1968, the applicable statute provided in pertinent part as follows:

"For the purpose of determining jurisdiction of courts within this commonwealth, * * * acquiring * * * personal property * * * by any foreign business corporation shall not constitute 'doing business.'" Pa.Stat.Ann. tit. 15 § 2011, subd. D.

We think defendant's purchase and receipt of the barges in Pennsylvania, without more, was within the quoted exception provided in the Pennsylvania statute. It follows that the district court properly decided that personal jurisdiction of defendant was not obtained by the service under the Pennsylvania statute.

■ Plaintiff next contends that there was a valid maritime attachment of defendant's assets by the garnishment of obligations of defendant's liability insurance carrier (Royal Globe Insurance Company) which it found in the jurisdiction. We understand plaintiff to be contending that an insurer's obligation to indemnify and duty to defend are attachable under Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Cases, Federal Rules of Civil Procedure. That rule provides in pertinent part:

"With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district."

We first consider whether the obligation to indemnify is an appropriate "debt"[2] for federal maritime attachment purposes. Historically, attachable property fell within one of two categories. It was either tangible property of the defendant capable of being seized and sold in satisfaction of a judgment or it was a contractual liability owing from the garnishee to the defendant which, at the time of attachment, could have supported a present or future action by the defendant against the garnishee. See generally Drake on Attachments § 463 (1891).

The insurer's aleatory obligation to indemnify is, of course, not capable of being sold on execution. Moreover, since it only becomes absolute when the defendant's liability has been finally determined and is within the policy coverage, the defendant has no cause of action against his insurer until those two conditions occur. Indeed, the aleatory nature of this contract makes impossible a prediction whether the insurer will ever have to meet his obligation to in-

---

2. Rule B(1) & B(3) (a) also use, *inter alia*, the terms "credits" and "effects." We use the term "debt" simply as a shorthand for these possible categories of attachable property.

demnify. Because the obligation is aleatory and thus may never become absolute, we conclude that it is not a "debt" subject to federal maritime attachment prior to the actual determination that the insured is liable and the policy terms cover his liability.

We shall next consider whether the insurer's contractual duty to defend is subject to maritime attachment under Supplemental Rule B(1). Attachment vests the court with quasi-in-rem jurisdiction, and the value of the res attached determines the effective limits of a judgment for the plaintiff. As we indicated previously, we do not believe the obligation to indemnify, which is completely aleatory at the time of attachment, can be made a part of the jurisdictional base by attachment. Thus, the plaintiff's sole recovery, if he is successful, would be the value, if any, of the duty to defend.

What then is the value of this duty to a potential purchaser at execution sale? Because the insurance carrier could not be obligated to defend a stranger to the contract by such a sale, we cannot conceive what there is to be sold.[3] Rather, we are convinced that whatever value inheres in this contractual duty of the insurer is personal to the insured. Thus, it is our conclusion that the duty to defend is not attachable under the present rule governing maritime attachment. It follows that no quasi-in-rem jurisdiction was obtained by the attempted attachment of the duty to defend and the obligation to indemnify.

The plaintiff, of course, would prefer that this court adopt the rule of Seider v. Roth[4] and its progeny. As we understand those cases, however, they are predicated on either of two assumptions both of which we find unacceptable. They may assume that the duty to defend, once attached, gives the court jurisdiction predicated not solely on the value of that duty but, when judgment is rendered for the plaintiff, also based on the obligation to indemnify. We would reject such a conclusion for the reasons heretofore given. Moreover, we do not believe a concept of expanding quasi-in-rem jurisdiction based on bootstrap logic is appropriate. See Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312, 315 (1966) (Burke, J., dissenting). Alternatively, the assumption may be that the obligation to indemnify is attachable at the time of the initial attachment. We have already expressed the reasons for our unwillingness to adopt such a rule. We simply do not believe that a contractual obligation, which may never require performance, is attachable under the language of the present rule.

There is, of course, a final possibility. The New York court, as Judge Friendly intimates,[5] may be judicially creating a direct action statute against insurance companies. The appropriateness of such a course is best left to each jurisdiction's sense of necessities. The *mirabile dictu* quality of the "miraculous per curiam"[6] denial of rehearing in Simpson v. Loehmann, 21 N.Y.2d 990, 290 N.Y.S. 2d 914, 238 N.E.2d 319 (1968), is sufficient to convince us that, for federal maritime purposes, this task is best left to Congress.

Plaintiff asserts next that the insured's obligation to indemnify and duty to defend are attachable under Pennsylvania law. It is clear that as to

---

3. Historically, maritime attachment has served two purposes: "to secure a respondent's appearance and to secure satisfaction in case the suit is successful." Swift & Company Packers v. Compania Colombiana Del Caribe, S. A., 339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L. Ed. 1206 (1950).

4. 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N. E.2d 312 (1966).

5. Minichiello v. Rosenberg, 410 F.2d 106, 109 (2d Cir. 1968). See Farrell v. Piedmont Aviation, Inc., 411 F.2d 812, 817 (2d Cir. 1969).

6. 410 F.2d at 111. See Judge Friendly's comments in Farrell v. Piedmont Aviation, Inc., supra, as well.

plaintiff's Jones Act claim, which sounds in tort, the attachment was clearly impermissible under Pennsylvania law because the alleged tort occurred outside of Pennsylvania. 12 P.S.App.R.C.P. 1251, et seq. Plaintiff's claims for unseaworthiness and maintenance and cure are not considered to be tort actions and are not subject to the limitations of the Pennsylvania rule. However, for the reasons we have given in disposing of the issue under maritime law, we believe Pennsylvania would also hold that jurisdiction cannot be obtained under its present foreign attachment law by the attachment of a duty to defend and an obligation to indemnify.

Plaintiff also asserts that under both Pennsylvania and maritime law there was a valid attachment to the extent of the value of prepaid and unearned premiums on four other liability insurance policies written for defendant by the same insurance carrier. The insurance carrier's answer to certain interrogatories established that $3,445.44 in premiums were so held at the time it was served with the attachment. However, the district court apparently did not decide these issues. We think it would be appropriate to remand this matter to the district court for appropriate consideration and disposition of these issues.[7]

In this connection, plaintiff also asserts that the district judge erred in limiting the scope of certain of his interrogatories. These interrogatories sought to discover all outstanding policies and the credits or refunds which would be due were these policies terminated. The district court allegedly limited answers to such of these as were located in Pennsylvania. Neither the judge's order nor the garnishee's answers indicate that such a limitation was imposed.

Since this action is to be remanded, we think it would be appropriate for the district court to determine whether the insurance carrier's answer to Interrogatory No. 4 indicates that it owed the defendant an unliquidated amount arising out of a pending automobile collision claim. If it does, the district court should decide whether the claim was attachable under either maritime or Pennsylvania law.

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

GANEY, Circuit Judge (concurring in part and dissenting in part).

I am in agreement with the majority opinion which remands the case to the district court to pass on the question of the unearned premiums paid on the policy; that the court should likewise pass on the answer to interrogatory No. 4 as to any asset belonging to the defendant with respect to the automobile collision; that the defendant, under the facts and circumstances of this case was not doing business in Pennsylvania, and thus could not be properly served under § 1011 of the Pennsylvania Business Corporation Law, 15 P.S. § 2011, and that the attachment-garnishee process would not lie under civil process in Pennsylvania, because the amount was unliquidated. Girard Fire & Marine Insurance Co. v. Field, 45 Pa. 129, 133.

However, I have a more compelling reason for remand in that the policy of insurance, which is the major point of difference by the court in this case, was never offered in evidence and therefore is not a part of the record. Accordingly, I do not think any competent judgment can be rendered with respect to the maritime process hereinafter adverted to without its being so offered and received and a critical analysis made of all its provisions.

The majority has ruled on this record that the maritime attachment resorted to by the appellant is invalid. I disa-

---

7. To the extent plaintiff asserts a Jones Act claim, which is ex delicto, the attachment is clearly impermissible under Pennsylvania law because the alleged tort occurred outside of Pennsylvania. 12 P.S.App.R.C.P. 1251, et seq.

gree and briefly set forth my views thereon, reserving to myself, absent the policy of insurance, any finality with respect thereto until after remand.

However, when we turn to the admiralty side of the case, I hold that there is sufficient in the statement of claim to identify the cause of action as a maritime one, as provided in Rule 9(h), Moore's Federal Practice Rules Pamphlet. Rule B(3) (a) of the Federal Supplemental Rules in Admiralty [1] speaks directly of "debts," as well as "credits and effects," as being subject to attachment-garnishment. This rule has an exact counterpart in McKinney's Consolidated Laws of New York, Book 7B, Section 5201.[2]

While intensive research has not disclosed any case in a maritime cause of action in which a defendant may resort to attachment under an accident insurance policy containing clauses which would grant to a defendant the right to indemnify and defend him, nevertheless I am presently inclined, though, as I have previously indicated, withholding final judgment until after remand, to look with favor on any possible procedure validating the process. Accordingly, I would turn to the highest court in the State of New York, which construed that the word "debt" has within its connotation something of value to the defendant and I would likewise construe the admiralty rule concerning attachment-garnishment proceedings, herein-

above set forth, containing the word "debt," as being valid here in conformity with the New York holding. See Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312, 313 (1966). This landmark case in the construction of contractual clauses in an accident insurance policy caused no little concern in the insurance world and also among text writers, and the court was asked to reconsider the matter, and in Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967), affirmed the holding in Seider v. Roth, *supra*, setting forth its conclusions thereon at page 672.

This position was buttressed in Minichiello v. Rosenberg, 410 F.2d 106 (2 Cir., 1968), and later in 1969, on rehearing en banc, in an opinion written by Judge Friendly, wherein it was held in a like case that the rule of law laid down in *Seider, supra,* and *Loehmann, supra,* did not offend the due process clause of the Fourteenth Amendment imposing an undue burden on interstate commerce or impair the contractual obligations of the policy.

On the record presently before this court, I am inclined to hold though, as I have indicated, I am withholding final judgment until after remand, that the service of process under the Rules in Admiralty, as hereinabove set forth, provides a valid basis for obtaining personal jurisdiction of the defendant.

---

1. This rule reads: *"By Garnishee.* The garnishee shall serve his answer, together with answers to any interrogatories served with the complaint, within 20 days after service of process upon him. Interrogatories to the garnishee may be served with the complaint without leave of court. If the garnishee refuses or neglects to answer on oath as to the debts, credits, or effects of the defendant in his hands, or any interrogatories concerning such debts, credits and effects that may be propounded by the plaintiff, the court may award compulsory process against him. If he admits any debts, credits, or effects, they shall be held in his hands or paid into the registry of the court, and shall be held in either case

subject to the further order of the court."

2. This section provides: "(a) Debt against which a money judgment may be enforced. A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or nonresident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state."