Arnold L. Fein, J.
Insurance Company of North America *387 (INA), as garnishee and defendant’s insurer, moves to vacate and set aside the order of additional attachment, dated June 13, 1974. Plaintiffs apply for judgment pursuant to CPLR 6214 (subd [d]), directing INA as garnishee to turn over, pay, deliver and transfer to the Sheriff of the City of New York the sum of $180,000, to satisfy the judgment to be entered upon a jury verdict against defendant in the total sum of $155,000, plus interest, costs and disbursements in the action, together with sheriff’s fees and poundage. Both applications are considered together.
The hand and wrist of the infant plaintiff, a resident of New York, were badly cut by the propeller of a motorboat owned and operated by defendant, after the infant had been cast overboard by the sudden acceleration of the boat in the waters off Madison, Connecticut, on August 13, 1964.
This action to recover for such injuries was instituted in this court by attachment of the liability insurance policy of the defendant, a Connecticut resident, under authority of Seider v Roth (17 NY2d 111). Affirming the denial of defendant’s motion to vacate the attachment, the Court of Appeals held jurisdiction in rem had been acquired by attaching the policy because the duty to defend and pay thereunder was a debt owed to defendant (Simpson v Loehmann, 21 NY2d 305).
Defendant’s attorney moved for reargument, asserting, in essence, that the policy was an excess policy and that its terms and conditions were such that it could not be found to be a tangible asset subject to levy or possession so as to confer in rem jurisdiction. The Court of Appeals denied the motion, noting that defendant on reargument had suggested "a meaning and interpretation of the insurance policy (the subject of the attachment) which is inconsistent with that subscribed to and acquiesced in by him on the appeal proper and on which the case has heretofore been considered and decided.” (Simpson v Loehmann, 21 NY2d 990.)
Issue was then joined. Defendant’s amended answer asserted, inter alia, as affirmative defenses that: (1) the policy attached was an excess policy which did not constitute a tangible asset of defendant so as to confer valid in rem jurisdiction (sixth defense); (2) any judgment which might be obtained "is not binding personally on defendant and may be satisfied only out of the res allegedly attached * * * to the extent of the value of the said res as set forth in the policy of insurance” (seventh defense). *388 Defendant’s attorney’s motion, pursuant to CPLR 3211 (subd [a], pars 1, 2, 8, 9), to dismiss the complaint and to vacate the order of attachment premised on these defenses among others, was denied on the ground that the same application had previously been presented to and rejected by the Court of Appeals. (Order, Sup. Ct., N.Y. County, Bloustein, J., Sept. 26,1968.)
Plaintiffs’ subsequent motion to dismiss and strike the last six affirmative defenses asserted, including the now pertinent sixth and seventh defenses noted supra, was granted upon the ground that these defenses sought to raise issues adversely decided by the Court of Appeals. (Order, Sup. Ct., N.Y. County, Riccobono, J., Jan. 24, 1973.)
The action was finally tried before the undersigned and a jury which returned a verdict in favor of plaintiff Michael Simpson in the sum of $150,000, and in favor of plaintiff William Simpson in the sum of $5,000. Subsequent to the jury verdict, plaintiffs obtained the order for additional attachment which is the subject of the instant motion and special proceeding.
The original attachment order directed that the sheriff levy "upon such property in which the defendant has an interest, and upon such debts owing to the defendant as will satisfy the plaintiffs’ demand up to $10,000.00 together with the probable interest, costs and the Sheriff’s fees and expenses”. (Order, Sup. Ct., N.Y. County, McGivern, J., Nov. 25, 1966.) The order of additional attachment following the jury verdict specified the INA policy previously attached and increased the amount by $145,000 in addition to the original attachment so as to be consistent with the verdict.
There is no merit to INA’s contention that the order of additional attachment is invalid and that plaintiffs are limited by the terms and amount of the original attachment. The order was obtained before entry of judgment and was timely (CPLR 6211). Moreover, it is manifest that the original attachment of the policy included insurance proceeds sufficient in an amount to satisfy any verdict rendered or judgment entered thereon. A review of the prior opinions, in particular those of the Court of Appeals, conclusively demonstrates that the value of the asset attached was the face amount of the liability insurance policy. It necessarily follows that the order of additional attachment was a precautionary measure sought by plaintiffs in advance of entry of judgment to foreclose any *389 questions which might persist as to the scope and extent of the property initially attached.
It is undisputed that both orders refer to the same INA liability policy. The validity of the attachment of that policy was upheld by the Court of Appeals which made the scope and extent of the property so attached crystal clear: "It is, of course, hardly necessary to add that neither the Seider decision nor the present one purports to expand the basis for in personam jurisdiction in view of the fact that the recovery is necessarily limited to the value of the asset attached, that is, the liability insurance policy. For the purpose of pending litigation, which looks to an ultimate judgment and recovery, such value is its face amount and not some abstract or hypothetical value.” (Simpson v Loehmann, 21 NY2d 305, 310, supra.)
INA’s present motion to vacate the order of additional attachment plainly seeks to relitigate issues already passed upon on several occasions in this case in this court, in the Appellate Division and in the Court of Appeals. The assertions and arguments now made are precisely the same as those presented to the Court of Appeals on reargument (21 NY2d 990) after that court had upheld the attachment as valid (21 NY2d 305). It is not necessary to determine whether the applicable doctrine is res judicata, collateral estoppel or law of the case. INA is barred from relitigating what has heretofore been determined. (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65.)
INA’s contention is that the policy is an excess policy and that under its terms the carrier is liable to pay only amounts due in excess of the retained limit of $100,000, because the assured warranted under schedule A of the policy that underlying primary insurance respecting watercraft liability was in full force at the inception of the policy, in the amount of $100,000 for each person and $300,000 for each occurrence.
However, that very same contention was rejected upon reargument by the Court of Appeals. Subsequently, it was asserted by way of the sixth and seventh separate and partial affirmative defenses in the amended answer.
As has been noted, these affirmative defenses were found insufficient on which to ground a summary judgment for defendant (Order, Bloustein, J., supra) and were stricken (Order, Riccobono, J., supra). No appeal was taken from *390 either order. To the extent here relevant, the order striking these defenses constitutes the law of the case.
INA’s contention that it now has standing to raise these issues anew under guise of its motion addressed to the order for additional attachment, on the ground it was not a party to the prior proceedings, is specious if not worse. The action was commenced as an in rem proceeding. Although instituted against the named defendant, it palpably is actually directed against INA, defendant’s insurer, upon the liability policy issued by it. And so INA treated it throughout, as did the courts. Both the majority in the Court of Appeals and Judge Keating concurring recognized that "the real party in interest is the insurer” (21 NY2d 305, 313, supra [Keating, J.]).
As the majority stated (21 NY2d 305, 311, supra): "Such an evaluation requires a practical appraisal of the situation of the various parties rather than an emphasis upon somewhat magical and medieval concepts of presence and power. Viewed realistically, the insurer in a case such as the present is in full control of the litigation; it selects the defendant’s attorneys; it decides if and when to settle; and it makes all procedural decisions in connection with the litigation.”
Initially and throughout the prior proceedings, up to the time of trial, defendant has been represented by Daniel J. Coughlin, Esq. He is the attorney who made the original return to the sheriff on behalf of INA. Moreover, it cannot be disputed that Mr. Coughlin is the attorney for and house counsel to INA. He regularly appears in courts throughout this city in that capacity. His appearance in the prior proceedings in this court and on the appeals was palpably on behalf of INA, defendant’s insurer, the real party in interest, albeit he appeared as the attorney for the defendant. The true function of such appearance is clearly demonstrated by the purpose, nature and scope of the attack on the attachment. Such attack was patently only in INA’s interest and under its control. There was never any basis for supposing that the attachment could confer personal jurisdiction over the defendant. Accordingly, only INA could be made to pay if the attachment stood. Vacation of the attachment would inure only to INA’s benefit and in no way to that of defendant. Moreover, if the policy were held to be excess, as repeatedly contended by INA, defendant might be prejudiced and only INA benefited. In the face of this record it is incredible that INA now contends it was neither represented nor heard.
*391 The fact that INA has retained other counsel upon this proceeding and motion, for whatever reason, does not affect the result which necessarily and realistically follows from the fact that INA has at all times been in full control of this litigation, and conducted it in its own interest.
Accordingly, it must be held that the orders of attachment and additional attachment of the INA liability policy were validly obtained. The Court of Appeals has upheld the validity of the original attachment. The more recently obtained order, being no more than an extension of the initial order, is likewise valid. It is not without significance that, in reliance upon the Court of Appeals opinion in this very case, it has now been expressly held that an excess insurance policy is a proper subject of an order of attachment. (Hoops v Norman, 46 AD2d 672.)
The motion by plaintiffs to direct payment by the insurer as garnishee of so much of the proceeds of the attached policy as is sufficient to satisfy the verdict, with interest, costs and disbursements in the action, plus poundage and sheriff’s fees and expenses, all as provided for in both the original and additional orders of attachment, is, though not specifically so designated, a special proceeding in the nature of a turnover proceeding brought pursuant to CPLR 6214 (subd [d]). Although the parties have not addressed themselves to the propriety of such procedure in this case, and no cases have been cited or found so ruling, the procedure here adopted, in lieu of a separate plenary action brought against the insurer, appears to be proper and within the compass of the statute. CPLR 6214 (subd [d]) represents a significant change from the former practice which placed the onus on the sheriff, either with or without joinder of the plaintiff, to bring a plenary action against the garnishee to enforce a levy. CPLR 6214 (subd [d]) authorizes a simplified procedure by which the plaintiff may bring a special proceeding against the garnishee for delivery of property to the sheriff. As in the case of other special proceedings, if a hearing or trial be deemed necessary, such may be directed by the court. (CPLR 410.)
In the special proceeding, INA has asserted four affirmative defenses. Only the second warrants further discussion. The first, third and fourth are found insufficient for the reasons heretofore discussed.
As noted, the prior determinations foreclose INA from litigating again its contention that it is only responsible for *392 payment in excess of the alleged retained limit under the terms of the policy which it had issued and that any judgment entered upon the verdict rendered is unenforceable as against INA for the first $100,000. However, even if it be assumed that the prior determinations dealt only with the validity of the attachment and not the nature and extent of the coverage, INA stands on no better footing, as appears on analysis, construction and interpretation of the policy. In determining whether the policy, as applied to the circumstances at bar, constitutes primary or excess coverage, the fact that a jury has returned a verdict in plaintiff’s favor, in and of itself, is immaterial. The injured party has no better or other rights than the assured. (Marcus v United States Cas. Co., 249 NY 21, 24.)
The construction and interpretation of a policy of insurance, as is the case with other written instruments, is a question of law for the court to determine, except "when the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact.” (Kenyon v Knights Templar and Masonic Mut. Aid Assn., 122 NY 247, 254.)
As stated more recently: "If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury * * * On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court. [Citing cases.]” (Hartford Acc. & Ind. Co. v Wesolowski, 33 NY2d 169, 172.)
The policy in suit here purports to be an excess policy. It provides for indemnity "for ultimate net loss in excess of the retained limit”. Retained limit is defined "as the greater of (a) an amount equal to the limit(s) of liability indicated beside the underlying policy(ies) listed or insurance described in Schedule A hereof plus the applicable limits of any other underlying insurance collectible by the insured; or (b) $1000 as the *393 result of any one occurrence not covered by said policy(ies) insurance.” Accordingly, the insurance policy issued by INA provides excess coverage where primary coverage exists or is required. But, where such other insurance is not required, or does not exist if not required, the instant policy furnishes primary coverage for all amounts over the $1,000 deductible and up to the policy limit.
By schedule A, the assured warranted, with respect to "watercraft liability”, that he had in force at the inception of the policy, collectible liability insurance in the amount of $100,000 for each person and $300,000 for each occurrence.
Since it has never been claimed during the long history of this case that such other insurance was in effect at the inception of the policy, our inquiry must be whether the warranty contained in schedule A required that such other insurance be obtained. It is patent that only the watercraft liability provisions of the policy are germane to the issue, since the accident occurred in the waters off Connecticut when plaintiff was thrown from defendant’s motor boat. It is undisputed that the boat was 18 feet in length.
The court is satisfied that the interpretation of the clause in question is strictly a question of law, and does not depend upon the sense in which the words were used. There is no need for proof of intention by extrinsic evidence. As stated in Johnson v Travelers Ins. Co. (269 NY 401, 408): "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms, which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense.”
On its face, the watercraft liability provision in schedule A appears to require underlying primary coverage for all watercraft. The schedule does not appear ambiguous so as to require parol evidence to determine the intention of the parties. (Hartford Acc. & Ind. Co. v Wesolowski, 33 NY2d 169, 174, supra; De Witt Props. Assoc. v United States Fire Ins. Co., 33 NY2d 785, 786.)
However, as with other contracts, policies of insurance are to be viewed in their entirety. All of the clauses contained in the policy are to be construed together so as to give effect to the entire instrument and avoid inconsistent provisions and interpretations. Applying this rule of construction to the policy at bar, it readily appears that the language employed in *394 schedule A cannot be read in isolation and without reference to other provisions in the policy. In the printed exclusions, the insurer has specifically excluded, from coverage, liability resulting from "the ownership, maintenance or use * * * of any watercraft owned by an insured * * * if twenty-six feet or more in overall length” unless there was in effect at the inception of the policy underlying insurance listed or described in schedule A.
Proper construction of the term "watercraft” as used in schedule A requires the incorporation of the definition of such term as contained in the cited exclusionary clause. Such a construction is necessary to give full effect to both clauses. Were it to be held that the term "watercraft”, as employed in schedule A, contemplated that underlying primary insurance be required for all watercraft, the result would be to render the stated exclusion superfluous. Under such a construction, the schedule annexed to the policy would be all-inclusive and would render the stated exclusion completely devoid of any meaning or effect whatsoever.
The only logical interpretation and construction which gives full effect to both policy provisions is to read the term "watercraft” in schedule A in the context of the definition of said term in exclusion (g). It follows that underlying insurance was required only for watercraft 26 feet or more in overall length. Any other interpretation would result in ambiguity, which, under general principles of construction, must be construed against the insurer. The insurance carrier which drafted the written instrument could have easily provided for the construction now urged by an appropriate provision in schedule A to the effect that the underlying insurance listed was to be required for all watercraft irrespective of size. The carrier cannot now be permitted to rely on one provision of the policy to the exclusion of another. Nor can it require a construction in its favor of any ambiguity which it has created.
The court finds that the policy attached is not an excess policy with respect to the 18-foot boat here involved.
Accordingly, the motion by the insurer as garnishee to vacate the order of additional attachment is in all respects denied, and the special proceeding brought by plaintiffs to compel payment by the insurer garnishee to the sheriff in accordance with the orders of attachment is in all respects granted.