189 A.2d 428 (1963)
Ernest R. BREECH, Additional defendant below, Appellant,
v.
HUGHES TOOL COMPANY et al., Defendants below, Appellee, and
Trans World Airlines, Inc., Plaintiff below, Appellee.
Supreme Court of Delaware.
February 25, 1963.
Daniel L. Herrmann, of Herrmann, Bayard, Brill & Gallagher, Wilmington, and Marvin Schwartz and John S. Allee, of Sullivan & Cromwell, New York City, for appellant.
James M. Tunnell, Jr., and George Tyler Coulson, of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellee Hughes Tool Co.
SOUTHERLAND, C. J., and WOLCOTT and TERRY, JJ., sitting.
*429 SOUTHERLAND, Chief Justice.
In the court below Trans World Airlines (TWA) brought suit against Howard Hughes and against Hughes Tool Company (Toolco), the majority stockholder of TWA, seeking to recover damages for (1) alleged mismanagement of TWA while Hughes and Toolco were in control of TWA, and for (2) alleged harassment of TWA after the management of TWA had changed. This change of control followed upon the execution of a voting trust in respect of the TWA stock owned by Toolco.
Jurisdiction over Hughes was obtained by sequestering shares of his stock in Hughes Tool Company. See Hughes v. Trans World Airlines, Del.Ch., 185 A.2d 886.
Toolco filed an answer denying the charges, and added four so-called counterclaims, one at least of which seeks monetary damages against TWA. The counterclaims allege a conspiracy against Toolco on the part (apparently) of TWA, and the part of nine additional defendants.
One of these additional defendants is the appellant Ernest R. Breech. Toolco sought to compel his appearance by sequestering certain shares of Ford Motor Company stock owned by him. Breech moved to dissolve the sequestration and the Vice Chancellor denied the motion. Breech moved for a general stay pending appeal. The Vice Chancellor granted only a limited stay for the purpose of applying here for a general stay.
Breech appeals and moves for a general stay. Toolco moves to dismiss the appeal. Breech also moved that dividends accrued upon the seized shares be released from the sequestration. This last motion has been disposed of by an order permitting the Vice Chancellor to consider and pass upon it.
There are therefore presented two questions:
1. Is the Vice Chancellor's order refusing to vacate the sequestration an appealable one?
2. Should a general stay be granted, having regard to the issues presented by the appeal?
1. We are of opinion that the order is an appealable one. The issues presented are hereafter discussed. As will be seen, they are more than procedural; they concern the right of a non-resident to challenge the legality of the seizure of his property on the ground that, for various reasons, the sequestration statute is inapplicable. The ruling of the Vice Chancellor determined substantial questions against Breech. It is appealable.
2. In support of his motion for a stay, and in support of his case on the merits, Breech makes three points.
First. He says that Toolco's counterclaim is not a "complaint" within the meaning of § 366, 10 Del.C. and hence that section is not applicable.
*430 The first sentence of § 366 provides as follows:
"If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant or defendants to appear by a day certain to be designated." (Emphasis supplied.)
The third sentence of the section provides for the seizure of the defendant's property, which may be sold "to pay the demand of the plaintiff * * *." (Emphasis supplied.)
Breech argues that Toolco's counterclaim is not a "complaint" and Toolco not a "plaintiff" within the meaning of the statute.
This is a highly technical argument. If we look at substance and not at form Toolco, in reality, is filing a complaint against TWA and the additional "defendants" and is, as regards those defendants, a "plaintiff". As the Vice Chancellor pointed out, to accept Breech's contention is merely to invite the filing of an independent suit and a motion to consolidate. What is accomplished by this except circuity of action?
Breech's contention on the point really rests upon the assertion that attachment of a non-resident's property is a "drastic remedy", and that the statute authorizing it should be strictly construed. This argument reminds us of the former characterization of foreign attachment by our courts as "a violent proceeding". This phrase was in effect disapproved in Judge Pearson's opinion in Blaustein v. Standard Oil Co., 4 Terry 449, 43 Del. 449, 49 A.2d 726, in which he pointed out that foreign attachment is in widespread use, and is merely one of many instances of permissible forceful interferences with property. 4 Terry 457, 43 Del. 457, 49 A.2d 729.
Our recent opinion in Matter of Klingaman's Estate, Del.Ch., 128 A.2d 310, holds that as to statutes in derogation of the common law the strict construction rule has in these days little application.
We see no reason to apply the rule in this case.
Breech makes a subsidiary argument under Chancery Rule 13(h), Del.C. Ann. That rule provides:
"Additional Parties May be Brought in. When the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counterclaim or cross-claim, the court shall order them to be brought in as defendants as provided in these rules, if jurisdiction of them can be obtained."
As above indicated, Toolco has sought to bring in additional defendants to answer his counterclaims, of whom Breech is one. His point is that the word "jurisdiction" in the last clause of the sentence means "personal jurisdiction", and does not contemplate process to compel appearance by sequestration. We see no reason thus to narrow the scope of the statute and the remedies available to a counterclaiming defendant. If jurisdiction is obtained, whether by personal service or through sequestration process, the counter suit may proceed.
Breech's first contention we think is without merit.
In passing upon these issues we expressly refrain from expressing any opinion whether the affirmative claims of Toolco constitute "counterclaims" under Rule 13, or whether the presence of appellant Breech in the action is "required for the granting of complete relief", as contemplated by paragraph (h) of the rule. We deal with the case as presented by counsel.
Second. Breech raises a constitutional question. He argues in effect that his Ford Motor Company stock has no situs in Delaware justifying the seizure. Since it is intangible property, it has a situs only *431 by legal fiction; therefore the selection of a situs for intangibles must be one that embodies a "common sense appraisal of the requirements of justice and convenience in particular conditions." Per Cardozo, J., in Severnoe Securities Corp. v. London & Lancashire Ins. Co., 255 N.Y. 120, 123-124, 174 N.E. 299, 300. Breech analogizes this test to the federal test respecting the subjection of a foreign corporation to the jurisdiction of a state, i. e. a test based on "minimum contacts" with the state of the forum "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95.
Breech insists that if such a test be applied here, Delaware has no jurisdiction to seize his stock. There are no sufficient "contacts", he says, between the seized shares and the claim asserted by Toolco to justify quasi in rem jurisdiction. Hence the seizure should be vacated.
This argument is interesting, but is clearly unsound under settled principles of law. The seized shares have a Delaware situs because the Ford Motor Company is a Delaware corporation and the corporation law to which it owes its existence provides expressly that the situs of ownership of stock of all such corporations, for "all purposes of title, action, attachment, garnishment and jurisdiction of all courts in this State" shall be regarded as in this State. 8 Del.C. § 169.
In Jellenik v. Huron Copper Mining Co., 177 U.S. 1, 20 S.Ct. 559, 44 L.Ed. 647, the Supreme Court of the United States upheld the right of the State of Michigan to determine ownership of shares of stock of a Michigan corporation. The court quoted the provisions of the Michigan statute, including provisions for attachment of the stock, and said:
"The authority of the state to establish such regulations in reference to the stock of a corporation organized and existing under its laws cannot be doubted." 20 S.Ct. 563.
And see Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 298, 77 L.Ed. 652.
The attachment of stock of Delaware corporations, without seizure of the certificate representing the shares, upon the theory that the stock has a statutory situs here, has existed since at least 1852 (Code, § 1253). The "situs" section cited above (§ 169), stems from the corporation law of 1899. 21 Del.L. c. 273, § 128. These statutes thus embody a settled Delaware policy, and the court may not overturn it on the basis of a suggested federal rule that has never been announced.
The weakness of Breech's contention is exposed by his concession that the attachment of Hughes' stock in "Toolco" was legal "because of the intimate relationship between the stock and cause of action alleged by plaintiff TWA." We have considerable difficulty in following this distinction. The primary purpose of the seizure is to compel appearance in a law suit, and to this purpose neither the nature of the property seized nor its incidental connection with the law suit seems material.
We are of opinion that the seizure was a constitutional exercise of power.
Third. Finally, it is argued that the issuance of process under § 366 is discretionary with the court, since the statute says that the court "may" compel appearance by seizure of property. We think the use of the verb "may" is without significance. It also appears, as it always has, in the statutes authorizing foreign attachment at law. See 10 Del.C. § 3506 and Code 1852, § 2290 (contract actions against individuals); 10 Del.C. § 3507 and 11 Del.L. c. 426 (contract actions against corporations); 10 Del.C. § 3508 and 22 Del.L. c. 207 (ex delicto actions against both). It has never been suggested, so far as we know, *432 that the use of this process by a litigant is controllable by the court's discretion. We think that he is entitled to it as a matter of right, just as he is entitled to a writ of summons.
We are of opinion that the appellant has no case on the merits. The disposition of the appeal will follow that in the Hughes case, above cited. The application for a stay pending appeal is denied, but a stay of ten days from the date of the mandate is granted to enable appellant to determine whether or not to enter an appearance. The mandate will affirm the order below, unless appellant desires to be heard further upon the matter.