No. 86-577

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

CONSUMERS UNITED INSURANCE COMPANY,
a foreign corporation,

   Plaintiff and Respondent,

 -vs--

ROGER JOHN SYVERSON,

   Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
      In and for the County of Gallatin,
      The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Landoe, Brown, Planalp, Kommers & Johnstone; Gene I.
    Brown argued, Bozeman, Montana

  For Respondent:

    Poore, Roth & Robinson; John P. Davis argued, Butte,
    Montana

---

          Submitted: May 1, 1987

          Decided: June 11, 1987

JUN 11 1987

Filed:

_Ethel M. Harrison_
         Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

We determine here that the tests of "traditional notions of fair play and substantial justice" (International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95) are met to establish jurisdiction of a nonresident defendant in the Montana court stemming from a bank account in controversy between Consumers United Insurance Company (Consumers) and Roger John Syverson (Syverson).

Consumers, a Washington, D.C. corporation, brought suit in the District Court, Eighteenth Judicial District, Gallatin County, against Syverson, a Texas resident, by filing a complaint alleging Syverson, while an officer of Consumers, had made unauthorized loans of Consumers' funds to third persons and had accepted "kick-backs" or unauthorized commissions from the borrowing third persons. Consumers further claimed that the unauthorized funds had been deposited through wire transfer by Syverson in First Citizens Bank of Bozeman, Montana (not a party to this action). Consumers prayed for judgment covering the unauthorized funds and further damages, or in the alternative, a preliminary injunction or restraining order conserving the deposited funds pending the action. Consumers also sought a declaration that the deposits were subject to a constructive trust in favor of Consumers.

On receiving the complaint, the District Court entered a temporary restraining order and show cause order addressed to Syverson. He appeared and moved to dismiss the action on the grounds that the District Court lacked jurisdiction of the action and his person.

All sides concede that Syverson has "not set foot in Montana;" that Consumers has no contact within Montana; that an action is presently pending in the Texas courts between Consumers and Syverson over the same controversy. The District Court did determine, upon evidence, that the deposited funds in the Bozeman bank are traceable to the claimed unauthorized commissions or kick-backs received by Syverson while acting as an officer of Consumers. No other contact between Syverson and the forum state, Montana, appears in this case.

The District Court, after hearing, entered judgment requiring (1) the funds on deposit in the Bozeman bank be retained (or invested by stipulation of the parties); (2) that upon receipt of a certified judgment from the Texas court, the deposited funds be disbursed in accordance with the Texas judgment to the prevailing party; and, (3) a sufficient bond of Consumers to abide the Texas result. The Montana judgment is final but without prejudice as to the claims of either party as between them personally.

Syverson has appealed the judgment to this Court again on the grounds that the Montana courts have no jurisdiction over the person of Syverson nor the funds deposited in the Bozeman bank.

Immediately brought into play by the facts of this case is a consideration of the jurisdiction, if any, of Montana state courts arising from a wire deposit of funds in a Montana bank by a nonresident defendant owner.

The complete answer is found in Shaffer v. Heitner (1977), 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683. In that case, Heitner, a nonresident of Delaware, filed a shareholders derivative suit in a Delaware state court, naming as defendants the Greyhound Corporation and its subsidiary and 28 present or former corporate officers or

- 3 -

directors. Heitner alleged that the individual defendants had violated their duties to the Greyhound Corporation by causing it and its subsidiary to engage in actions which occurred in Oregon that resulted in corporate liability for substantial damages in a private antitrust suit and a large fine in a criminal contempt action. Simultaneously Heitner, under a Delaware statute, filed a motion for sequestration of the Delaware corporate property of the individual defendants, all nonresidents of Delaware, accompanied by an affidavit identifying the property to be sequestered as stock, options, warrants and various corporate rights of defendants. Under the Delaware statute, a sequestration order was issued by the Delaware state court pursuant to which shares and options belonging to 21 defendants were "seized" and "stop transfer" orders were placed on the corporate books. Under the Delaware statute, the sequestration would remain in effect as to the nonresidents, to be released when the defendants came into the action by way of general appearance, thus completely subjecting themselves to the jurisdiction of the Delaware court.

The nonresident defendants appeared specially in the Delaware state court, seeking to quash service of process and to vacate the sequestration order, contending that the ex parte sequestration procedure did not accord them due process, that the property seized was not capable of attachment in Delaware and that they, the individual nonresident defendants, did not have sufficient contacts with Delaware to sustain jurisdiction of Delaware state courts under the rule of International Shoe, supra.

The Delaware Court of Chancery asserted quasi in rem jurisdiction which the Delaware Supreme Court affirmed, ruling out the holding of International Shoe:

- 4 -

> There are significant constitutional questions at issue here but we say at once that we do not deem the rule of International Shoe to be one of them. . . . The reason, of course, is that jurisdiction under § 366 [the Delaware sequestration statute] remains . . . quasi in rem founded on the presence of capital stock here, not on prior contact by defendants with this forum. Under 8 Del. C. § 169 the "situs of the ownership of the capital stock of all corporations existing under the laws of this state . . . [is] in this State", and that provides the initial basis for jurisdiction. Delaware may constitutionally establish situs of such shares here, [Citations omitted] it has done so and the presence thereof provides the foundation for §§ 366 in this case.

Greyhound Corp. v. Heitner (Del. 1976), 361 A.2d 225, 229.

As might be expected, the United States Supreme Court held that jurisdiction of the nonresident defendants could not be acquired in Delaware under its sequestration statute, saying:

> The Delaware courts based their assertion of jurisdiction in this case solely on the statutory presence of appellants' property in Delaware. Yet that property is not the subject matter of this litigation, nor is the underlying cause of action related to the property. Appellants' holdings in Greyhound do not, therefore, provide contacts with Delaware sufficient to support the jurisdiction of that State's courts over appellants. If it exists, that jurisdiction must have some other foundation.

Shaffer, 433 U.S. at 213, 97 S.Ct. at 2584, 53 L.Ed.2d at 703.

The corollary to the foregoing statement by the United States Supreme Court is that if the property in the state is the subject matter of the litigation or if it is related to the underlying cause of actions between the parties, jurisdiction over the nonresident owner could be acquired by the state court. The United States Supreme Court in Shaffer

made the corollary clear, although the Delaware statute was held unconstitutional.

The Supreme Court in Shaffer noted its holdings in the history of state court jurisdiction over nonresident defendants in in personam, in rem and quasi in rem actions from Pennoyer v. Neff (1877), 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565, down to International Shoe. It noted that International Shoe departed from Pennoyer in that a state court could subject a nonresident defendant to a judgment in personam even though the defendant was not present within the territory of the forum, but had certain minimum contacts with it such that the maintenance of the suit did not offend "traditional notions of fair play and substantial justice." Shaffer, 433 U.S. at 203, 97 S.Ct. at 2579, 53 L.Ed.2d at 697. "Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of Pennoyer rest, became the central concern of the inquiry into personal jurisdiction." Shaffer, 433 U.S. at 204, 97 S.Ct at 2580, 53 L.Ed.2d at 698.

Not touched by International Shoe was the status of state court judgments over nonresident defendants based on jurisdiction in rem or quasi in rem. The Supreme Court in Shaffer questioned whether the presence of property in the state, standing alone, gave the state jurisdiction to adjudicate owner's rights to the property regardless of the relationship of the property or the underlying dispute and the property owner to the forum. Shaffer, 433 U.S. at 205, 97 S.Ct. at 2580, 53 L.Ed.2d at 698. Recognizing that an adverse judgment in rem directly affects the property owner by divesting him of his rights before the court, the Supreme Court decided it was time to consider whether the standard of

- 6 -

fairness and substantial justice set forth in <u>International</u> <u>Shoe</u> should govern actions <u>in</u> <u>rem</u> as well as <u>in</u> <u>personam</u>:

> The case for applying to jurisdiction <u>in</u> <u>rem</u> the same test of "fair play and substantial justice" as governs assertions of jurisdiction <u>in</u> <u>personam</u> is simple and straightforward. It is premised on recognition that "[t]he phrase, 'judicial jurisdiction over a thing,' is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing." Restatement (Second) of Conflict of Laws § 56, Introductory Note (1971) (hereafter Restatement). This recognition leads to the conclusion that in order to justify an exercise of jurisdiction <u>in</u> <u>rem</u>, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in <u>International</u> <u>Shoe</u>.

<u>Shaffer</u>, 433 U.S. at 207, 97 S.Ct. at 2581, 53 L.Ed.2d at 699-670.

The Supreme Court in <u>Shaffer</u> recognized that difficulties may arise in applying <u>International</u> <u>Shoe</u> to jurisdiction <u>quasi</u> <u>in</u> <u>rem</u>. It solved the difficulty by stating that if the presence of property in a state was to be the basis of jurisdiction in that state for a judgment against a nonresident defendant, the property in the state must be the subject of the action or related to the underlying controversy.

In the case at bar, we have clearly an item of personal property, though intangible, that is related to the subject in controversy, and is in fact the subject of the controversy. The District Court here specifically found that the deposited funds in the Bozeman bank were traceable to the alleged claims of kick-back asserted by Consumers.

Applying the <u>International</u> <u>Shoe</u> factors to this case, as we must under <u>Shaffer</u>, we examine the relationship among the defendant, the forum, and the litigation to determine whether these factors meet the test of minimum contacts so as not to offend traditional notions of fair play and substantial justice. In the case at bar, the test is clearly met. There is a positive nexus between Syverson, who caused the funds to be deposited in his name in Montana, the forum, where the deposits are located, and the litigation, which concerns ownership of the deposits. Moreover, the judgment of the District Court supports traditional notions of fair play and substantial justice by effectively making the Bozeman bank a stakeholder of the deposited funds biding the determination of the controversy in the Texas courts. Syverson, a resident of Texas, can have no objection to the resolution of the underlying controversy in his home state.

We note that the decision of this Court in Gassert v. Strong (1908), 38 Mont. 18, 98 P. 497, which was decided under principles of <u>quasi</u> <u>in</u> <u>rem</u>, following <u>Pennoyer</u>, would be the same if examined under the principles of <u>International</u> <u>Shoe</u> and <u>Shaffer</u>.

Accordingly, we affirm the judgment of the District Court in this case. Because of this affirmance, discussion of the other issues raised by the parties is unnecessary.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
L. C. Gulbrandson,

_____
William E. Hunt
Justices

_____
Hon. Peter L. Rapkoch,
District Judge, sitting for
Justice Frank B. Morrison

- 9 -